Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| PR ASSET PORTFOLIO 2013-1 INTERNATIONAL, LLC<br><br>Apelado<br><br>v.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Apelante | KLAN202400219 | ***APELACIÓN*** procedente del Tribunal de Primera Instancia, Sala Superior de Aibonito<br><br>Caso Núm.: SJ2019CV10751<br><br>Sobre: Incumplimiento Aseguradora Huracanes Irma/María |

Panel integrado por su presidenta, el Juez Rodríguez Casillas, la Jueza Rivera Pérez y el Juez Hernández Sánchez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece ante nos One Alliance Insurance Corporation (en adelante, parte apelante o One Alliance) y nos solicita la revisión de una *Sentencia* emitida el 11 de enero de 2024, notificada el 17 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Aibonito (en adelante, TPI de Aibonito o foro primario). Mediante dicho dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada el 19 de septiembre de 2023 por PR Asset Porfolio 2013-1 International, LLC (en adelante, parte apelada o PRAPI), y No Ha Lugar la *Moción de Sentencia Sumaria* presentada el 24 de septiembre de 2023 por One Alliance. En consecuencia, el foro primario le ordenó a la aquí parte apelante a satisfacer el pago de $1,493,856.59 a favor de la parte apelada bajo el acuerdo de *2nd Claim Submission*; culminar el ajuste y pago de las reclamaciones

[1] Conforme a la Orden Adm. OAJP-2021-086 inciso 3, sobre la asignación de recursos nuevos cuando el mismo ha generado recursos anteriores en el TA y OATA2023-040 del 1 de marzo de 2023, que nombró al Juez Hernández Sánchez en sustitución de la Hon. Meléndez Miró. Relacionado con los recursos KLAN202201050, KLCE202201271 y KLCE202201330 asignados al Juez Rodríguez Casillas.

Número identificador

SEN2024_____

pendientes de las propiedades, incluidas en la parte del *2nd Claim Submission* y la totalidad del *3rd Claim Submission,* de las propiedades sitas en la Región Judicial de Aibonito; el pago a PRAPI de los intereses postsentencia calculados al interés legal vigente del 9.2%; el pago a PRAPI de intereses presentencia por morosidad; y el pago de honorarios de abogado por la cuantía de $25,000.00 conforme lo requiere el Artículo 27.165 del Código de Seguros, *infra.*

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**-I-**

La demanda original del caso de epígrafe fue radicada el 6 de septiembre de 2019 ante el Tribunal de Primera Instancia, Sala Superior de San Juan. [2] A la referida acción legal-sobre incumplimiento de contrato de seguro, mala fe y acción declaratoria-le fue asignado el número SJ2019CV09195. Sin embargo, toda vez que las propiedades objeto de reclamación radicaban en distintas municipalidades, el 17 de septiembre de 2019, el TPI de San Juan ordenó la separación de las causas de acción mediante la creación de casos nuevos. [3] Además, dispuso que luego de cobrar los aranceles correspondientes para cada caso nuevo, procedería el traslado de estos a las regiones judiciales correspondientes, donde la parte demandante debía radicar una demanda enmendada. Así, la causa de acción de epígrafe quedó dividida en trece (13) casos, en doce (12) regiones judiciales distintas.

En cumplimiento con la *Orden* del TPI de San Juan, PRAPI presentó las correspondientes *Demandas Enmendadas* en las distintas Regiones Judiciales. Las alegaciones y remedios solicitados

---

[2] Véase la entrada Núm. 1 del expediente digital del Caso Núm. SJ2019CV10751 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[3] Entrada 2 del caso Núm. SJ2019CV10751 de SUMAC.

en las demandas enmendadas eran los mismos, excepto por la descripción de las propiedades y las cuantías reclamadas.

Ahora bien, ante nuestra consideración se encuentran únicamente el caso SJ2019CV10751 de la Región Judicial de Aibonito.

El 12 de febrero de 2020, PRAPI presentó su *Demanda Enmendada* en la Región Judicial de Aibonito contra One Alliance.[4] En apretada síntesis, PRAPI alegó que posee varias propiedades—entre residenciales y comerciales—que sufrieron daños como consecuencia del paso del huracán María por Puerto Rico. Toda vez que las propiedades estaban aseguradas mediante las pólizas número 75-28-000001258 y 75-28-000001259, expedidas por One Alliance, PRAPI sometió la reclamación correspondiente. Las referidas pólizas proveían cubierta, entre otras, a cinco (5) propiedades localizadas en la Región Judicial de Aibonito, las cuales fueron objeto de la causa de acción en el caso de epígrafe.

Surge del expediente que las partes acordaron atender la reclamación en tres (3) fases: *1st, 2nd* y *3rd Claim Submission*. Con respecto al *1st Claim Submission*, PRAPI arguyó que One Alliance pagó el ajuste ofertado correspondiente a cuarenta y tres (43) propiedades por la cantidad global de $2,123,198.90. De estas cuarenta y tres (43), dos (2) estaban sitas en la Región Judicial de Aibonito, por las cuales se pagó $81,601.078. Por otro lado, a pesar del ajuste, oferta y promesa de pago que hizo One Alliance por veintinueve (29) de las sesenta y cuatro (64) propiedades del *2nd Claim Submission*-el cual incluía una (1) de las cinco (5) propiedades sitas en la Región Judicial de Aibonito-PRAPI alegó que esta primera se retractó y retiró la oferta ya aceptada por la cantidad de $1,493,856.59. Asimismo, sostuvo que One Alliance decidió

---

[4] Apéndice del recurso de *Apelación*, págs. 1-22.

unilateralmente reducir el pago aceptado a $413,354.44, luego de restar un supuesto sobrepago en el *1st Claim Submission.* Además, PRAPI alegó que One Alliance no atendió el *3rd Claim Submission* a pesar de que había sido sometido hace más de un año, el cual incluía dos (2) propiedades sitas en la Región Judicial de Aibonito.

Ante ello, PRAPI solicitó el pago correspondiente de las propiedades del *2do Claim Submission* que ubican en la Región Judicial de Aibontio, el cual fue ofrecido por la cantidad de $5,702.60. Además, solicitó intereses, daños, el pago de las pérdidas reclamadas y cubiertas correspondientes a las restantes propiedades que fue ofrecido, acordado y aceptado; más el pago correspondiente a las restantes treinta y cinco (35) propiedades del *2nd Claim Submission;* así como la totalidad del *3er Claim Submission.*

Tras varios incidentes procesales, el 22 de marzo de 2020, One Alliance presentó su contestación a la *Demanda Enmendada.*[5] Mediante esta, reconoció el pago realizado a favor de PRAPI por el *1st Claim Submission,* así como la oferta de pago correspondiente a veintinueve (29) propiedades del *2nd Claim Submission.* No obstante, arguyó que el ajuste siempre estuvo sujeto a que posteriormente no surgiera información errónea sobre la propiedad o que constituyera ocultación de información material para el ajuste de la reclamación. En cuanto al *3rd Claim Sumbission,* One Alliance aseguró que llevó a cabo la investigación correspondiente, pero que hubo la necesidad de re-inspeccionar las propiedades puesto que existían diferencias en el alcance de los daños directos causados por el huracán. Así, One Alliance alegó en su defensa que PRAPI mintió, ocultó información o deliberadamente sometió información falsa e incompleta en apoyo a sus reclamaciones. Por ello, señaló que

---

[5] Apéndice del recurso de *Apelación,* págs. 23-48.

procedía la devolución de los pagos realizados por el *1st Claim Submission*; procedía denegar el pago de las reclamaciones restantes, y anular la póliza de seguro.

Posteriormente, el 2 de febrero de 2021, One Alliance radicó una *Reconvención* donde adujo que durante el descubrimiento de prueba obtuvo información relacionada a actuaciones de PRAPI constitutivas de fraude y falsa representación.[6] Así, por ejemplo, alegó que PRAPI no ostentaba interés propietario sobre parte de las propiedades aseguradas, algunas con anterioridad al paso del huracán María, otras durante el proceso de reclamación y ajuste, y otras, con anterioridad a la presentación de la *Demanda*. Ello, en unión a la ocultación de información sobre las condiciones de las propiedades, los números de catastro y descripción registral de estas. Por tanto, toda vez que PRAPI no poseía un interés asegurable sobre algunas de las propiedades, One Alliance sostuvo que procedía la anulación de la póliza y la devolución de los pagos realizados en el *1st Claim Submission.*

El 5 de abril de 2021, PRAPI replicó y argumentó que ni el estado de derecho vigente, ni la póliza de seguro requieren que ostentara un interés asegurable al momento del pago del *1st Claim Submission* y el *2nd Claim Submission.*[7] Además, con respecto al pago del *1st Claim Submission*, PRAPI alegó que el mismo constituyó un pago en finiquito, por lo que One Alliance no tenía derecho a recobrar el dinero ofrecido, aceptado y depositado. Además, alegó que de conformidad a lo resuelto en *Carpets & Rugs v. Tropical Reps, 175 DPR 615 (2009),* One Alliance estaba impedida de retractarse del ajuste y oferta emitida y aceptada con relación al *1st* y *2nd Claim Submission.* Por último, PRAPI señaló que One Alliance no podía

---

[6] Entrada 45 del caso Núm. SJ2019CV10751 de SUMAC.
[7] Entrada 66 del caso Núm. SJ2019CV10751 de SUMAC.

invocar el fraude como defensa a la cubierta al haber sido negligente en su investigación.

Así las cosas, PRAPI presentó una *Moción de Sentencia Sumaria Parcial* y escrito intitulado *Relación de hechos materiales incontrovertidos apoyando Solicitud de Sentencia Sumaria.* [8] En síntesis, ante la inexistencia de hechos en controversia solicitó: que se declarara que PRAPI no tenía que devolver el dinero recibido como pago por el *1st Claim Submission;* el pago del ajuste y oferta emitido por One Alliance—aceptado por PRAPI—correspondiente a veintiocho (28) de las sesenta y tres (63) propiedades incluidas en el *2nd Claim Submission;* que se declarara que One Alliance no podía anular las pólizas; y que se ordenara a la aseguradora a culminar la investigación de las reclamaciones que continuaban pendientes. Apoyó su solicitud en las deposiciones tomadas al Sr. Orlando Rivera Cintrón, Gerente de Reclamaciones de One Alliance, al Sr. Mortimer P. Vélez Monclova, Vicepresidente Auxiliar de Suscripción de One Alliance, al Sr. Víctor Ríos, Presidente de One Alliance y al Sr. Ricardo Acosta de la Rosa, ajustador de seguros. También incluyó una declaración jurada del Sr. Anthony Soto, representante de PRAPI; la póliza de seguro; los cheques emitidos y endosados correspondientes al *1st Claim Submission,* así como otros documentos relacionados a las reclamaciones pendientes.

One Alliance se opuso alegando la existencia de hechos materiales en controversia; principalmente, sobre las actuaciones constitutivas de fraude y falsa representación incurridas por PRAPI en la tramitación de las reclamaciones.[9] Así, por ejemplo, cuestionó si PRAPI verdaderamente tenía un interés asegurable sobre las propiedades en cuestión. One Alliance se opuso y para sostener sus argumentos, incluyó en su escrito en oposición la deposición tomada

---

[8] Entradas 84 y 85 del caso Núm. SJ2019CV10751 de SUMAC.
[9] Entrada 91 del caso Núm. SJ2019CV10751 de SUMAC.

al Sr. Anthony Santoro, representante de PRAPI y una declaración jurada del Sr. Rafael Muñoz, analista financiero de PRAPI. Además, hizo referencia a las deposiciones incluidas por PRAPI en su solicitud de *Sentencia Sumaria*, así como otros documentos relacionados, para contrarrestar aquellas determinaciones de hechos que había propuesto, la apelada, como incontrovertidos, por entender que constituían una malinterpretación de lo verdaderamente declarado.

El 18 de noviembre de 2022, notificada el 21 de noviembre de 2022, el TPI de Aibonito dictó *Sentencia Parcial*.[10] En virtud de las determinaciones de hechos y la documentación sometida, el TPI concluyó que PRAPI no cometió ningún tipo de fraude o "que haya habido otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente previo a emitir su ajuste". En consecuencia, resolvió que One Alliane no podía retractarse de los ajustes y ofertas del *1st Claim Submission* con relación a las propiedades ubicadas en Aibonito; por tanto, PRAPI no tenía que devolver dinero alguno. En cuanto al restante de las alegaciones y remedios solicitados en la *Demanda Enmendada*, relacionados al *2nd* y *3rd Claim Submission*, resolvió que se atenderían en juicio plenario.

Inconforme con la determinación del TPI de Aibonito, One Alliance presentó el recurso de *Apelación* en el caso KLAN202201050 imputándole al TPI haber cometido los siguientes errores luego de declarar Ha lugar la *Sentencia Sumaria* presentada por PRAPI: 1) que erró el TPI al determinar que One alliance no se podía retractar de los ajustes y ofertas del *1st Claim Submission*, esto a pesar de que el foro primaria había determinado que atendería la validez de la nulidad de la póliza en vista plenaria; 2) que erró el TPI

---

[10] Entrada 100 del caso Núm. SJ2019CV10751 de SUMAC.

al determinar que PR Asset no tenía que devolverle a One Alliance suma alguna a pesar de que determinó que la validez de la nulidad de la póliza sería atendida en vista plenaria, violando así el debido proceso de ley y; 3) que erró el TPI al determinar que no procedía devolución alguna a One Alliance, cuando dicha controversia estaba pendiente de adjudicación en la *Reconvención,* violándose el debido proceso de ley.[11]

El 13 de marzo de 2023, dictamos *Sentencia* mediante la cual revocamos la *Sentencia Parcial* dictada por el TPI de Aibonito. En esa ocasión razonamos que, ante la existencia de controversia relacionada a las alegaciones de fraude y falsa representación sobre las propiedades aseguradas, no procedía dictarse *Sentencia Sumaria Parcial.*

Surge del expediente que el 15 de mayo de 2023, PRAPI acudió ante nuestro más alto foro. Sin embargo, el Tribunal Supremo no expidió el auto.[12]

El 19 de septiembre de 2023, PRAPI presentó una *Moción para que se dicte Sentencia Sumaria de conformidad a Sentencia final y firme en caso relacionado de Caguas por ser cosa juzgada sobre las materias de en este pleito.*[13] Mediante esta, PRAPI señaló que este Tribunal de Apelaciones dictó una *Sentencia* en la cual revocamos la determinación del TPI de Caguas por haber denegado la *Moción de Sentencia Sumaria Parcial* presentada por esta. Además, expresó que en la referida *Sentencia* le concedimos los remedios solicitados y desestimamos la *Reconvención* presentada por One Alliance. Asimismo, PRAPI apuntó que debido a que la *Sentencia* había

---

[11] KLAN202201050. Este caso fue consolidado con el caso KLCE20201271 en el cual se recurrió de una *Resolución* dictada por el TPI, Sala Superior de Humacao y el KLCE20201330, del cual se recurrió de una *Resolución* dictada por el TPI, Sala Superior de Guayama. En ambos casos, los foros inferiores denegaron la *Moción de Sentencia Sumaria Parcial* presentada por PR Asset. En relación a estos últimos dos, este tribunal denegó la expedición del recurso de *certiorari.*
[12] Véase AC-2023-0037.
[13] Apéndice del recurso de *Apelación,* págs. 399-474. Véase, además, KLCE20201139.

advenido final y firme, esta tenía el efecto de cosa juzgada. Según PRAPI, los pleitos instados en las distintas regiones judiciales, donde había propiedades aseguradas, surgen a raíz del fraccionamiento del pleito original en la Región Judicial de San Juan. Por tanto, argumentó que todos los pleitos en las distintas regiones judiciales versaban sobre las mismas partes, las mismas reclamaciones de seguro bajo las mismas pólizas, involucraban las mismas transacciones y se trataba de las mismas controversias de hecho y de derecho. Así pues, para que se garantizara la consistencia que requiere la doctrina de cosa juzgada solicitó los siguientes remedios:

> • *Declare que la anulación de las pólizas fue invalida;*
> *Declare que One Alliance no se puede retractar de los ajustes y ofertas del 1st Claim Submission y parte del 2nd Claim Submission;*
> • *Declare que PRAPI no tiene que devolverle a One Alliance suma alguna con relación al 1st Claim Submission;*
> • *Ordene a One Alliance a pagarle a PRAPI los $1,493,856.59 que le debe bajo el acuerdo suscrito entre las partes respecto el 2nd Claim Submission;*
> • *Ordene a One Alliance a culminar el ajuste y pago de las reclamaciones de propiedad incluidas en parte del 2nd Claim Submission y la totalidad del 3rd Claim Submission en un término perentorio;*
> • *Ordene a One Alliance a pagarle a PRAPI los intereses post-sentencia calculados al interés legal de 9.25% según dispone la tabla de intereses aplicables a sentencias judiciales emitida por la Oficina del Comisionado de Instituciones Financieras;*
> • *Ordene a One Alliance a pagarle a PRAPI los intereses pre-sentencia por morosidad, debido a que One Alliance no tenía razón leg[í]tima para negarse a satisfacer el ajuste y oferta que le cursó a PRAPI en el 2019;*
> • *Ordene a One Alliance a pagar honorarios de abogado conforme lo requiere el Artículo 27.165 del Código de Seguros, 26 L.P.R.A. § 2716e ("Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado [...] el Tribunal de Primera Instancia [...] deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación."*

Por su parte, el 24 de septiembre de 2023, One Alliance presentó su *Moción de Sentencia Sumaria en virtud de la Regla 36.3 de Procedimiento Civil.*[14] En la referida moción, One Alliance sostuvo

---

[14] Apéndice del recurso de *Apelación,* págs. 475-1548.

la alegación sobre la comisión de conductas fraudulentas por parte de PRAPI, en violación a las cláusulas del contrato de seguros suscrito entre ambas partes. Por tal razón, solicitó que: a) se determinara la comisión de fraude por parte de PRAPI; b) se anulara la póliza de seguros número 75-28-000001259-0 (NPL); c) se anulara la póliza de seguros número 75-28-000001258-0 (REO); d) se le ordenara a PRAPI devolverle a One Alliance el dinero pagado por concepto del *1st Claim Submission;* y e) se le impusiera el pago de los gastos incurridos al momento a favor del One Alliance.

Asimismo, el 11 de octubre de 2023, One Alliance presentó una *Oposición a Moción para que se dicte Sentencia Sumaria y en solicitud de desestimación.*[15] En esta, One Alliance arguyó que no procedía la *Sentencia Sumaria* presentada por PRAPI debido a que la *Sentencia* del Tribunal de Apelaciones en el caso de la Región Judicial de Caguas no se adjudicó en cuanto a causas de acción pendientes, principalmente sobre las alegadas actuaciones fraudulentas de la parte apelada.[16] Por tanto, para One Alliance existían hechos materiales que estaban en controversia que impedían disponer el caso sumariamente. También, adujo que no se cumplía con los requisitos de la doctrina de cosa juzgada, toda vez que el caso de autos no gozaba de cosas y causas de perfecta identidad entre ambos pleitos. Señaló, además, que en la alternativa las determinaciones de este Tribunal de Apelaciones sobre los casos de las demás regiones judiciales-las cuales declaraban Sin Lugar la *Sentencia Sumaria-* surtieran efecto de cosa juzgada sobre el caso de la Región de Caguas.[17] Señalaron que estas gozaban de finalidad y firmeza previamente a la emisión de la *Sentencia* en Caguas.

---

[15] Apéndice del recurso de *Apelación*, págs. 1549-1562.
[16] Véase KLCE202201139.
[17] Véase sentencias consolidadas KLCE202201271, KLCE202201330 y KLAN202201050 que determinan que no procede la *Sentencia Sumaria* ante la existencia de hechos esenciales en controversia.

El 21 de noviembre de 2023, PRAPI presentó *Escrito en Oposición a Moción de Sentencia Sumaria de One Alliance [SUMAC Núm. 126]; en Réplica a Oposición y Solicitud de Desestimación de One Alliance [SUMAC Núm. 130]; y en Solicitud de Honorarios por Temeridad* en el cual reprodujo brevemente los argumentos que apoyaban su *Moción de Sentencia Sumaria*.[18] Expresó que One Alliance incumplió con los requisitos de la Regla 36 de las de Procedimiento Civil, *infra*. Asimismo, señaló que obtuvo dos sentencias dictadas por este foro intermedio en donde declaramos Ha lugar la *Moción de Sentencia Sumaria Parcial* presentada por ellos y otra que confirma al foro de instancia el cual declaró Ha lugar la *Demanda* luego de un juicio en su fondo.[19] En cuanto a esta última, resolvimos que la decisión de la Región Judicial de Caguas tuvo el efecto de cosa juzgada sobre la Región Judicial de Aguadilla.[20]

Además, PRAPI presentó *Moción informativa sobre decisiones persuasivas* en la cual expresó que existían seis (6) sentencias ordenando a One Alliance: (1) a pagar su ajuste *del 2nd Claim Submission*; (2) ajustar el remanente del *2nd Claim Submission* y la totalidad del *3rd Claim Submission*; y (3) pagar la suma producto de ese ajuste.[21] Explicó que estas sentencias eran uniformes en torno a que las alegaciones de fraude de One Alliance eran inmeritorias tanto procesal como sustantivamente, y que además, anularon las

---

[18] Apéndice del recurso de *Apelación*, págs. 1563-1703.
[19] En específico, dos sentencias del Tribunal de Apelaciones, una que corresponde a la Región Judicial de Caguas (KLCE2022O1139) y otra a la Región Judicial de Fajardo (KLCE2022O1212). Además, la *Sentencia* del Tribunal de Apelaciones de 22 de septiembre de 2023, confirmando la *Sentencia* final del Tribunal de Primera Instancia de Aguadilla, emitida luego de un juicio en su fondo (KLAN202300485).
[20] Véase KLCE2022O1139 y KLAN202300485.
[21] Apéndice del recurso de *Apelación,* págs. 1704-1859; Véase, KLAN202300485 (proveniente del caso SJ2019CV10725 del TPI de Aguadilla); KLCE202201139 (proveniente del caso SJ2019CV10729 del TPI de Caguas); KLCE202201212 (proveniente del caso SJ2019CV10753 del TPI de Fajardo); SJ2019CV10806 (proveniente del TPI de Ponce a la entrada de SUMAC Núm. 150); SJ2019CV10808 (proveniente del TPI de Utuado a la entrada de SUMAC Núm. 187); SJ2019CV10739 (proveniente del TPI de Arecibo a la entrada de SUMAC Núm. 319).

pólizas objeto de los litigios ilícitamente. También, señaló que dos de esas sentencias eran finales y firmes.

El 13 de diciembre de 2023, One Alliane presentó *Breve Dúplica a: "Réplica a Oposición y Solicitud Desestimación De One Alliance [Sumac Núm. 130] y Solicitud de Honorarios por Temeridad y a Moción Informativa sobre Decisiones Persuasivas".*[22] Señaló en la referida contestación que no existían propiedades inmuebles en la jurisdicción de Aibonito que pudieran haberse juzgado mediante una *Sentencia* emitida en otro foro judicial y que en el caso de autos este tribunal apelativo había emitido una *Sentencia* final y firme donde resolvimos que no procedía la solicitud de *Sentencia Sumaria* presentada por PRAPI, debido a la existencia de controversia de hechos. [23] Además, señaló que este foro intermedio emitió un *Mandato* al TPI de Aibonito con una orden específica de continuar los procedimientos. Por tanto, sostuvo que no procedía la solicitud de PRAPI de *Sentencia Sumaria* por una controversia que fue juzgada en otra jurisdicción y bajo otro supuesto de hechos. Así pues, señaló que procedía la continuación de los procedimientos en el TPI de Aibonito.

El 13 de diciembre de 2023, One Alliance ripostó con un escrito intitulado *Réplica a "Escrito en Oposición a Moción de Sentencia Sumaria de One Alliance [SUMAC Núm 126]" y en Oposición a "Solicitud de Honorarios por Temeridad".*[24] Argumentó que cumplió con los requisitos de la Regla 36 de las de Procedimiento Civil, *infra*. Asimismo, apuntó que había levantado el fraude desde el inicio del pleito y que esta acción no estaba prescrita conforme al Código de Seguros de Puerto Rico. Señaló que había sido PRAPI quien

---

[22] Apéndice del recurso de *Apelación,* págs. 1860-1866.
[23] Véase KLAN202201050.
[24] Apéndice del recurso de *Apelación,* págs. 1867-1884.

obstaculizó los procedimientos para que pudiera obtener la prueba sobre el alegado fraude.

Así las cosas, el 11 de enero de 2024, el TPI de Aibonito dictó *Sentencia* en el caso de autos. [25] El foro primario realizó las siguientes determinaciones de hechos:

1. *El 10 de enero de 2023, notificada el 11 del mismo mes, el Tribunal de Apelaciones dictó Sentencia en el caso KLCE202201139 (proveniente del caso SJ2019CV10729 del Tribunal de Caguas) ("Sentencia de Caguas"), revocando la Resolución del Tribunal de Primera Instancia en el caso relacionado de Caguas, que había denegado la Moción de Sentencia Sumaria de PRAPI.*

2. *En la Sentencia de Caguas, el Tribunal de Apelaciones determinó que One Alliance no podía retractarse del ajuste que le emitió a PRAPI. En cuanto a esto, dispuso que "One Alliance no demostró que hayan surgido circunstancias extraordinarias que le fueran imposibles descubrir al momento de emitir el ajuste." Véase Id., pág. 8. Por tanto, concluyó que "erró el Tribunal de Primera Instancia al no ordenar a One Alliance que realizara el pago del ajuste emitido ya que se trata de una deuda líquida, vencida y exigible." Véase Id., pág. 9; véase además Id., pág. 8 (PRAPI "[s]eñala que [el TPI] debió ordenar a One Alliance cumplir con el pago del ajuste emitido en el 2nd Claim Submission. Tiene razón.").*

3. *El Tribunal de Apelaciones también determinó que "[s]i bien es cierto que, One Alliance presentó Reconvención alegando fraude por parte de PRAPI, el momento para levantar cualquier reclamación era cuando se realizó la investigación de la reclamación y el ajuste, no posteriormente," por lo cual no procedía la misma. Véase Id., pág. 8-9.*

4. *One Alliance recurrió al Tribunal Supremo de la Sentencia. El Tribunal Supremo acogió la apelación de One Alliance como recurso de Certiorari y la denegó.*

5. *El Tribunal Supremo rechazó las dos mociones de reconsideración que presentó la aseguradora posteriormente, por lo cual, habiéndosele agotado los remedios apelativos a One Alliance, la Sentencia de Caguas advino en final y firme.*

6. *El 11 de septiembre de 2023 se registró el mandato correspondiente en autos en el caso de Caguas.*

7. *Este Tribunal toma conocimiento judicial que el Tribunal de Apelaciones emitió otra sentencia idéntica a la de Caguas, pero esta vez proveniente del pleito ventilándose en la Región Judicial de Fajardo ("Sentencia de Fajardo") en el caso KLCE202201212 (proveniente del caso SJ2019CV10753 del Tribunal de Fajardo). Esta Sentencia también es final y firme, según el expediente de ese caso demuestra.1 [SUMAC 138].*

Ante dichas determinación de hechos, concluyó el TPI de Aibonito que; procedía dictar *Sentencia* a favor de PRAPI toda vez que las sentencias del TPI Caguas y Fajardo surtían efecto de cosa juzgada en el caso de autos; que procedía declarar No ha lugar la *Moción de*

---

[25] Apéndice del recurso de *Apelación,* págs. 1885-1898.

*Sentencia Sumaria* presentada por One Alliance por adolecer de múltiples defectos procesales, y además, porque estaba vedada como cuestión de derecho por operación de la doctrina de cosa juzgada; y que One Alliance no había demostrado la existencia del alegado fraude por parte de PRAPI. Por tanto, el TPI de Aibonito declaró Ha lugar la *Moción de Sentencia Sumaria* presentada por PRAPI y No ha lugar la *Moción de Sentencia Sumaria* presentada por One Alliance. Asimismo, dictó *Sentencia* declarando*:* que la anulación de las pólizas por One Alliance fue inválida; que One Alliance no se puede retractar de los ajustes y ofertas del *1st Claim Submission* y parte del *2nd Claim Submission*; y que PRAPI no tiene tenía que devolverle a One Alliance suma alguna con relación al *1st Claim Submission*. En consencuencia, ordenó a One Alliance lo siguiente:

> • *Pagarle a PRAPI los $1,493,856.59 que le debe bajo el acuerdo suscrito entre las partes respecto el 2nd Claim Submission;*
> • *Culminar el ajuste y pago de las reclamaciones pendientes de propiedad incluidas en parte del 2nd Claim Submission y la totalidad del 3rd Claim Submission sitas en la Región Judicial de Aibonito en un término perentorio de 30 días;*
> • *Pagarle a PRAPI los intereses post-sentencia calculados al interés legal vigente de 9.25% según dispone la tabla de intereses aplicables a sentencias judiciales emitida por la Oficina del Comisionado de Instituciones Financieras;*
> • *… [P]agarle a PRAPI los intereses pre-sentencia por morosidad, debido a que One Alliance no tenía razón leg[í]tima para negarse a satisfacer el ajuste y oferta que le cursó a PRAPI en el 2019;*
> • *Pagarle [a] PRAPI honorarios de abogado por la cuantía de $25,000 conforme lo requiere el Artículo 27.165 del Código de Seguros, 26 L.P.R.A. § 2716e ("Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado […] el Tribunal de Primera Instancia […] deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación".)*

El 1 de febrero de 2024, One Alliance solicitó la *Reconsideración* de la referida *Sentencia* emitida por el TPI de

Aibonito.[26] Dicha *Reconsideración* fue declarada No ha lugar por el foro primario el 5 de febrero de 2024.[27]

Insatisfecho, One Alliance acudió ante nos el 6 de marzo de 2024 mediante recurso de *Apelación* y nos planteó la comisión de los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI AL DETERMINAR "QUE LAS SENTENCIAS DE CAGUAS Y FAJARDO SURTEN EFECTO DE COSA JUZGADA EN ESTE PLEITO" Y NO ORDENARSE LA DESESTIMACIÓN; PUES LO JUZGADO, COMO CUESTIÓN DE DERECHO UMBRAL, NO PUEDE VOLVER A JUZGARSE;
>
> (i)   APLICANDO ERRÓNEAMENTE LA DOCTRINA DE "COSA JUZGADA" EL TPI EMITIÓ, EN ABUSO DE SU DISCRECIÓN Y VIOLANDO EL DEBIDO PROCESO DE LEY, ORDEN PARA QUE ONE ALLIANCE EMITIERA LOS PAGOS QUE YA HABÍAN SIDO ORDENADOS EN LA REGIÓN DE CAGUAS Y DE FAJARDO, CONVIRTIÉNDOSE EN UNA ORDEN DE PAGO TRIPLICADO;
>
> (ii)  ORDENANDO EL PAGO DE INTERESES PRE-SENTENCIA CUANDO EL CASO DE AUTOS ES EN RECLAMO DE UN INCUMPLIMIENTO DE CONTRATO NO DE COBRO DE DINERO;
>
> (iii) ORDENANDO EL PAGO DE INTERESES POST-SENTENCIA Y HONORARIOS QUE TAMBIÉN HABÍAN SIDO ORDENADOS EN CAGUAS Y FAJARDO, CONVIRTIÉNDOSE EN UNA ORDEN DE PAGO TRIPLICADO POR LOS MISMOS CONCEPTOS;
>
> (iv)  LA SENTENCIA APELADA APLICA A LOS HECHOS TODO LO CONTRARIO A LO QUE ESTABLECE LA DOCTRINA DE "COSA JUZGADA";
>
> (v)   LA SENTENCIA APELADA PROVOCA UN ENRIQUECIMIENTO INJUSTO POR CANTIDADES MILLONARIAS ABSOLUTAMENTE IMPROCEDENTE.
>
> **SEGUNDO ERROR:** ERRÓ EL TPI AL ADJUDICAR SOBRE CONTROVERSIAS "JUZGADAS" INCIDIENDO EN ORDEN DE PAGO DE RECLAMACIÓN SOBRE PROPIEDADES INMUEBLES QUE NO ESTÁN SITAS EN ESTA JURISDICCIÓN Y QUE POR ORDEN DE TRASLADO SE "JUZGARON" EN OTRA JURISDICCIÓN;
>
> **TERCER ERROR:** ERRÓ EL TPI AL ORDENAR PAGOS DE RECLAMACIONES DECLARANDO HA LUGAR UNA SENTENCIA SUMARIA QUE YA EL TRIBUNAL DE APELACIONES HABÍA DECLARADO IMPROCEDENTE, ANTE LA EXITENCIA DE CONTROVERSIA DE HECHOS (KLCE202201050).

El 11 de marzo de 2024, emitimos una *Resolución* concediéndole a la parte apelada el término de treinta (30) días para

---

[26] Apéndice del recurso de *Apelación,* págs. 1899-1923.
[27] Apéndice del recurso de *Apelación,* pág. 1924.

presentar su alegato en oposición.[28] El 6 de mayo de 2024, se cumplió con lo ordenado, por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes, así como el expediente apelativo; y evaluado el derecho aplicable, procedemos a resolver.

**-II-**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). Se considera un hecho material aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. *Bobé et al. V. UBS Financial Services*, 198 DPR 6, 20 (2017). Asimismo, "resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso." *Cruz Cruz v. Bella Group*, 2024 TSPR 47; 213 DPR __ (2024).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335; *León Torres v. Rivera Lebrón*, supra, pág. 43. Para ello, la

---

[28] El 1 de abril de 2024, One Alliance solicitó prórroga para presentar su alegato. El 3 de abril de 2024, emitimos una *Resolución* concediéndole hasta el 6 de mayo de 2024 para presentar su posición.

Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón*, supra, pág. 43.

La Regla 36.3 (e) de Procedimiento Civil, *supra*, dispone que la sentencia sumaria solicitada será dictada inmediatamente:

> "si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente." Véase, además, *Rodríguez García v. UCA*, supra; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018).

Como regla general, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 335-336; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011). De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656 (2017); *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010).

La Regla 36.4 de Procedimiento Civil, *supra,* regula que ocurre cuando no se dicta una sentencia sumaria en su totalidad, sobre la misma expone:

> "Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno."

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente de novo y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 338 que cita a *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *Fernández-Bernal v. RAD-MAN et al.,* supra; *González Santiago v. Baxter Healthcare,* 202 DPR 281, 291 (2019).

**B.**

Para que se configure la defensa de cosa juzgada se tiene que cumplir con los requisitos siguientes: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el

caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad. *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 221-225 (2012).

En resumen, la doctrina de cosa juzgada requiere que entre el caso resuelto mediante sentencia y en el caso en que se invoca concurra la más perfecta identidad entre las cosas, causas, personas litigantes y la calidad en que lo fueron. *Pérez Droz v. A.S.R.*, 184 DPR 313, 317 (2012). Véanse, además, *Méndez v. Fundación*, 165 DPR 253, 267 (2005). Cuando se cumplen estos requisitos no procede dilucidar nuevamente los méritos de la controversia que se encuentra ante la consideración del tribunal.

El requisito de identidad de causas se refiere al "origen de las acciones o excepciones planteadas y resueltas, y no debe confundirse con los medios de prueba ni con los fundamentos legales de las pretensiones deducidas por las partes". *Presidential v. Transcaribe*, 186 DPR 263, 275 (2012) que cita a J.M. Manresa, *Comentarios al Código Civil español*, 5ta ed. rev., Madrid, Ed. Reus, 1950, T. VIII, Vol. 2, págs. 237-42. Entiéndase, que la causa "es el motivo que tuvo el demandante para pedir". *Íd.* que cita a *Beníquez et al. v. Vargas et al.*, supra. La identidad de cosas significa que el segundo pleito se refiera al mismo asunto que versó el primero, entiéndase, que sea el mismo objeto o materia. Por otro lado, la identidad de partes requiere que los litigantes hayan sido los mismos y que su comparecencia haya sido en la misma calidad. Finalmente, la identidad de personas se refiere a que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o indivisibilidad de prestaciones. En cuanto a la calidad de los litigantes, la doctrina dispone que se trata del carácter en el cual la persona viene al pleito, entiéndase: acreedor, deudor, poseedor, etcétera. *Presidential v. Transcaribe*, supra, pág. 274; *A & P Gen.*

*Contractors v. Asoc. Caná,* 110 DPR 753, 762 (1981). Cumplidos estos requisitos, la doctrina de cosa juzgada impide que, luego de emitida una sentencia en un pleito anterior, las mismas partes relitiguen en un pleito posterior las mismas causas de acción, las controversias ya litigadas y adjudicadas, y aquellas que pudieron haber litigado. *Pérez Droz v. A.S.R.,* supra, *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 769 (2003); *Acevedo v. Western Digital Caribe, Inc.*, 140 DPR 452, 464 (1996).

De la doctrina de cosa juzgada emana el impedimento colateral por sentencia. Este último se diferencia de la doctrina de cosa juzgada al no requerir que las controversias objeto del litigio sean las mismas. *Presidential v. Transcaribe*, supra, págs. 276-277. La doctrina de impedimento colateral "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas". *Íd.,* pág. 277 que cita a *Beníquez et al. v. Vargas et al.,* supra.

El impedimento colateral tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes. *Beníquez et al. v. Vargas et al.,* supra; *Méndez v. Fundación*, supra. No obstante, no procede la interposición de la mencionada doctrina cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto y no ha resultado ser la parte perdidosa en el litigio anterior. *Íd.*

Se han reconocido dos modalidades de la figura del impedimento colateral por sentencia: la ofensiva y la defensiva.

En la modalidad ofensiva, un demandante le impide al demandado litigar otra vez los asuntos que previamente litigó y perdió frente a otra parte. En cambio, la modalidad defensiva surge cuando un demandado impide a un demandante que litigue otra vez asuntos que previamente litigó y perdió frente a otra parte. *Méndez v. Fundación,* supra.

## C.

La Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3, versa sobre la fijación del interés legal postsentencia y presentencia (o por temeridad). Esta dispone lo siguiente:

> (a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, y que esté en vigor al momento de dictarse la sentencia, en toda sentencia de dinero, **a computarse sobre la cuantía de la sentencia que ordena el pago desde la fecha en que se dictó y hasta que ésta sea satisfecha, incluso las costas y los honorarios de abogado**. El tipo de interés se hará constar en la sentencia.
>
> La Junta fijará y revisará periódicamente la tasa de interés por sentencia, tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la presentación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible.
>
> (b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya surgido la causa de acción en **todo caso de cobro de dinero y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia** a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, dependencias funcionarios o funcionarias en su carácter oficial. El tipo de interés se hará constar en la sentencia.

Así, según la Regla 44.3 de Procedimiento Civil, *supra,* el interés postsentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. Este se computa sobre la cuantía de la sentencia, incluyendo las costas y los honorarios de abogado, y se fija desde la

fecha en que se dicte la sentencia hasta que esta se satisface. *Gutiérrez v. A.A.A.*, 167 DPR 130, 136-137 (2006). La fijación del interés legal postsentencia tiene el propósito de "evitar la demora irrazonable en el cumplimiento de las obligaciones declaradas judicialmente por sentencia, y estimular su pago en el menor tiempo posible." SLG *González-Figueroa v. SLG et al.*, 209 DPR 138, 146 (2022). Asimismo, la fijación de este tipo de interés legal es obligatoria, es decir, puede ser recobrable aunque no sea mencionado en la sentencia e independientemente de que la parte contraria haya o no, actuado con temeridad. *Íd.*

De otra parte, el interés por temeridad o presentencia se impone cuando convergen los dos requisitos siguientes: 1) que la parte haya procedido temerariamente; y 2) que se trate de un caso sobre cobro de dinero o daños y perjuicios. *Íd*; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 505 (2010). La temeridad ha sido definida "como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables." *Marrero Rosado v. Marrero Rosado*, supra; *Elba A.B.M. v. U.P.R.*, 125 DPR 294, 329 (1990). De igual modo, el Tribunal Supremo ha señalado que la temeridad, para propósitos de la imposición de este interés legal, es la misma que conlleva el mandato del pago de honorarios de abogado. *Íd.* Además, el propósito de ambas penalidades es "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa por los perjuicios económicos y las molestias producto de la temeridad de la otra parte." *Marrero Rosado v. Marrero Rosado*, supra, pág. 505; *Montañez v. U.P.R.*, 156 DPR 395, 425 (2002).

El interés por temeridad o presentencia se fija sobre la suma principal de la sentencia dictada sin incluir las costas ni los honorarios de abogado. *González Ramos v. Pacheco Romero,* supra.

Además, se calcula dependiendo de la reclamación de que se trate; en los casos de cobro de dinero, se computa desde que surge la causa de acción, y en el caso de daños y perjuicios se hará a partir de la presentación de la demanda. *Gutiérrez v. A.A.A.*, supra, pág. 137; *Montañez v. U.P.R.*, supra, págs. 424-425. Asimismo, el foro primario tendrá discreción para imponer interés por temeridad, por lo que como tribunal revisor solo intervendremos si se cometió algún abuso de discreción. *Marrero Rosado v. Marrero Rosado*, supra; J. A. Cueva Segarra, *Tratado de Derecho Procesal Civil*, Estados Unidos de Norte América, 2da ed., Publicaciones JTS, 2011, T. IV, pág. 1330.

Ahora bien, el concepto de interés por temeridad es distinguible del concepto de interés legal postsentencia contenido en la Regla 44.3 (a) de Procedimiento Civil, *supra*.

En cuanto a los intereses por mora, el Código Civil de Puerto Rico de 1930, establece en su Artículo 1061, 31 LPRA sec. 3025, que "[s]i la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal."[29] Asimismo, el Artículo 1053 del Código Civil de 1930, 31 LPRA sec. 3017, que "[i]ncurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación." *Rodríguez Sanabria v. Soler Vargas*, 135 D.P.R. 779, 783 (1994). La mora es definida como "el retardo culpable: '...en sentido lato, se entiende por mora o demora el retraso en el cumplimiento de la obligación. Pero en sentido propio y jurídico sólo es mora el retardo culpable'" *Valcourt v. Iglesias*, 78 DPR 630, 638 (1955) que cita a Castán,

---

[29] El Código Civil de Puerto Rico de 1930 era el vigente al momento de la presentación de la *Demanda* en el caso de epígrafe.

*Derecho Civil Español, Común y Foral* 140 (ed. del Instituto Editorial Reus 1954).

La disposición anterior añadía que no será necesaria la intimación del acreedor cuando la obligación o la ley así lo declaren y cuando de la naturaleza y circunstancias resulte la designación de la época en que había de entregarse la cosa o hacerse el servicio. Artículo 1053 del Código Civil de 1930, *supra*.

En fin, para que exista mora por parte del deudor es necesario que se trate de una obligación positiva de dar o hacer, que la obligación sea exigible y líquida y esté vencida, que el deudor retarde culpablemente el cumplimiento de su obligación y que el acreedor requiera el pago al deudor ya sea judicial o extrajudicialmente. J. Castán Tobeñas, *Derecho Civil Español*, Común y Foral, 16ta ed., Madrid, Ed. Reus S.A., 1992, Tomo III, págs. 238-240.

### D.

El Artículo 27.165 de la Ley 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 2716e, mejor conocida como el *Código de Seguros de Puerto Rico* dispone:

> (1) Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado o el beneficiario designado bajo una póliza o contrato ejecutado por el asegurador, el Tribunal de Primera Instancia o, en el caso de una apelación en la que prevalezca el asegurado o beneficiario, el tribunal de apelación, deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación.
> (2) En cuanto a las demandas basadas en reclamos que surjan de pólizas de seguro de vida o contratos de anualidad, no se aplicará dicha tarifa de abogado permitido si tal demanda se inició antes de la expiración de sesenta (60) días después de la presentación de la prueba del reclamo debidamente presentada ante la aseguradora.
> (3) Cuando se otorgue, la compensación u honorarios del abogado se incluirán en la sentencia o decreto dictado en el caso.

La Ley 247-2018, añadió el Artículo 27.165 al Código de Seguros de Puerto Rico, *supra*. Esta legislación surge a raíz de las reiteradas violaciones a las disposiciones del Código de Seguro de Puerto Rico por parte de las aseguradoras para responderle a los asegurados durante la devastación que dejaron los huracanes Irma y María en Puerto Rico. Exposición de Motivos de la Ley 247, *supra*. Así pues, la legislación tiene el propósito de brindar herramientas y protecciones adicionales a los asegurados para garantizar el fiel cumplimiento de los fines del Código de Seguros y agilizar el proceso de recuperación de Puerto Rico. Exposición de Motivos de la Ley 247-2018; *Consejo de Titualres v. MAPFRE*, 208 DPR 761, 771 (2022). Asimismo, al aprobar el referido estatuto, el legislador también tuvo la intención, entre otras cosas, de obligar a las aseguradoras que obren de mala fe al pago de honorarios de abogado. Exposición de Motivos de la Ley 247, *supra*.

### E.

La jurisdicción es el poder o autoridad que ostenta un tribunal para resolver los casos y las controversias que tiene ante su consideración. *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021). En Puerto Rico, los tribunales poseen jurisdicción general, es decir, que ostentan la "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación...". *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). Así, el Artículo V, Sec. 2 de la Const. PR, LPRA, Tomo 1, establece que "los tribunales de Puerto Rico constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración." Véase además Artículo 2.001 de la Ley 201-2003, 4 LPRA sec. 24b, según enmendada, mejor conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*. Por su parte, la Regla 3.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 3.1, en lo pertinente dispone que los tribunales de Puerto Rico tendrán

jurisdicción sobre "todo asunto, caso o controversia que surja dentro de la demarcación territorial del Estado Libre Asociado de Puerto Rico." De este modo, "cualquier parte del sistema tiene jurisdicción para resolver una causa", aunque ese tribunal no tenga competencia para ello. *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 394 (2022).

Por otro lado, la competencia es "la facultad que tienen las distintas salas para conocer ciertos negocios, ya por la naturaleza de las cosas, o bien por razón de las personas." Cueva Segarra, *op. cit.,* 2011, T. I, pág. 265. Dicho de otro modo, la competencia es la manera en que se organiza y canaliza la jurisdicción de los tribunales. *Íd.* La Regla 3.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 3.1, menciona que:

> Todo pleito se presentará en la sala que corresponda según lo dispuesto por ley y por estas reglas, pero no se desestimará ningún caso por razón de haberse sometido a una sala sin competencia.
> Todo pleito podrá tramitarse en la sala en que se presente por convenio de las partes y la anuencia fundamentada del juez o jueza que presida dicha sala en ese momento. De lo contrario, será transferido por orden del juez o jueza a la sala correspondiente.

En cuanto a la competencia sobre pleitos que afecten las propiedades inmuebles, la Regla 3.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 3.3, dispone que "[l]os pleitos en relación con el título o algún derecho o interés en bienes inmuebles deberán presentarse en la sala correspondiente a aquella en que radique el objeto de la acción, o parte del mismo." Según el tratadista Cueva Segarra, la referida regla no aplica cuando se trata de una acción personal. Cueva Segarra, *op. cit.*, 2011, T. I, pág. 271.

**-III-**

A la luz de la normativa antes expuesta, procedemos a evaluar los errores señalados en el recurso ante nuestra consideración. La parte apelante presentó tres (3) señalamientos de error, los cuales discutiremos en conjunto por estar relacionados entre sí.

En esencia, en su primer señalamiento de error la parte apelante plantea que las sentencias de las regiones judiciales de Caguas y Fajardo tuvieron el efecto jurídico de evitar la relitigación del caso por ser cosa juzgada, por lo que resultaba improcedente que el TPI de Aibonito emitiera las mimas órdenes de pago sobre las reclamaciones, los intereses postsentencia y los honorarios de abogados que ya habían sido emitidos por las referidas regiones judiciales. Es decir, que la orden de pago emitida por el TPI de Aibonito se convierte en un pago triplicado provocando un enriquecimiento injusto. Además, en el primer señalamiento de error señalaron que no procedía el pago de intereses presentencia toda vez que el caso de epígrafe versa sobre un incumplimiento de contrato y no sobre cobro de dinero. En cuanto al segundo error, alegan que el TPI de Aibonito incidió al ordenar el pago sobre propiedades inmuebles que no están sitas en la Región Judicial de Aibonito. Por último, apuntan en su tercer error que el foro primario erró al haber declarado ha lugar la *Sentencia Sumaria* presentada por PRAPI cuando previamente la habíamos declarado improcedente en el caso KLCE202201050, ante la existencia de hechos en controversia.

Examinada de *novo* la moción de sentencia sumaria presentada por PRAPI, así como la moción en oposición presentada por One Alliance, concluimos que las determinaciones de hechos formuladas por el TPI de Aibonito en el dictamen apelado encuentran apoyo en la prueba que obra en el expediente, por lo que las acogemos por referencia y las hacemos formar parte de nuestro dictamen. Además, añadimos que en este caso tampoco existe controversia de hechos en cuanto a que las partes acordaron atender la reclamación en tres (3) fases: *1st, 2nd y 3rd Claim Submission.* También se desprende del expediente como hecho incontrovertible que este caso se presentó originalmente en el TPI de

San Juan. No obstante, se ordenó la separación de las causas de acción mediante la creación de casos nuevos debido a que las propiedades objeto de reclamación radicaban en distintas municipalidades.

De la evaluación del caso, procede que el tribunal disponga de este sumariamente cuando no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho. *Fernández-Bernal v. RAD-MAN et al.*, supra

Asimismo, para que aplique la doctrina de cosa juzgada, deben coincidir los siguientes elementos: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad. *Beniquez et al. v. Vargas et al.*, supra. En resumen, la doctrina de cosa juzgada requiere que entre el caso resuelto mediante sentencia y en el caso en que se invoca concurra la más perfecta identidad entre las cosas, causas, personas litigantes y la calidad en que lo fueron. *Pérez Droz v. A.S.R.*, supra.

En cuanto a los elementos de cosa juzgada, no está en controversia que las sentencias de Caguas y Fajardo advinieron finales y firmes. Tampoco está en controversia que las partes sean las mismas y que comparecieron en la misma calidad en las regiones judiciales de Caguas y Fajardo y en este pleito. Así pues, PRAPI compareció a los pleitos como la parte demandante y asegurada. Por su parte, One Alliance compareció como la parte demandada y aseguradora. En cuanto a los demás requisitos, no está en controversia que en el objeto de este pleito se comparte entre los casos relacionados los acuerdos de transacción y las reclamaciones

de seguro que PRAPI aún tiene pendiente frente a One Alliance. Por otro lado, en cuanto al concepto de "causa", el motivo que tuvo PRAPI para demandar es el mismo en de todos estos pleitos: que One Alliance no ha pagado lo que debe bajo el acuerdo de transacción suscrito sobre el *2nd Claim Submission*, y que tampoco ha ajustado y pagado el remanente de la reclamación.

Consonó con lo discutido anteriormente, resolvemos que no le asiste la razón a One Alliance en cuanto a que el TPI de Aibonito había incidido al ordenar el pago de reclamaciones sobre propiedades inmuebles que no están sitas en la jurisdicción de Aibonito. En este caso, el TPI de Aibonito ordenó a One Alliance pagarle a PRAPI la suma de $1,493,856.59 que le debía bajo el acuerdo suscrito del *2nd Claim Submission*. Esta suma corresponde al ajuste y ofrecimiento de pago que One Alliance le hiciera a PRAPI por veintinueve (29) de las sesenta y cuatro (64) propiedades **que componían el *2nd Claim Submission***.

La orden de pago del TPI de Aibonito solo recoge lo resuelto en las sentencias de Caguas y Fajardo que atienden las mismas alegaciones de fraude de One Alliance presentadas en estas regiones judiciales y que también fueron alegadas en la Región Judicial de Aibonito.[30] Es decir, que One Alliance no puede "negarse a emitir el pago del *1st and 2nd Claim Submission* de las propiedades ajustadas una vez fue aceptado por PRAPI".[31] Por su parte, el foro primario de Aibonito resolvió que la anulación de las pólizas por One Alliance fue inválida; que One Alliance no se puede retractar de los ajustes y ofertas del *1st Claim Submission* y parte del *2nd Claim Submission*; y que PRAPI no tiene que devolverle a One Alliance suma alguna con relación al *1st Claim Submission*. Por tanto, el pago ordenado del

---

[30] Se toma conocimiento judicial del caso Núm. SJ2019CV10753 del TPI de Fajardo (Entrada 111 de SUMAC); Caso Núm. SJ2019CV10729 del TPI de Caguas (Entrada 159 de SUMAC); Caso Núm. SJ2019CV10751 del TPI de Aibonito (Entrada 91 de SUMAC).
[31] KLCE202201139; Véase, además, KLCE202201212.

*2nd Claim Submission* por estas regiones judiciales es global y no solo de la Región Judicial de Aibonito en particular. Dicho de otra forma, los remedios solicitados por One Alliance en las regiones judiciales versan sobre los ajustes y ofertas del *1st Claim Submission* y parte del *2nd Claim Submission* de forma global y no sobre cada inmueble en particular que está localizado en las distintas regiones. De hecho, así lo reconoce la One Alliance en su recurso apelativo cuando señala que el pago de honorarios de abogados no procede "toda vez, que el Demandante [PRAPI] ya tiene **Orden de pago por la cantidad global del 2nd Claim Submission**."[32] Es evidente que aunque se trata de distintas regiones judiciales, las alegaciones, las controversias, la prueba documental y los remedios solicitados por ambas partes son los mismos.[33] En este caso lo único que varía en los escritos es la descripción de las propiedades en controversia y las cuantías solicitadas de cada una.

Además, One Alliance alega que la orden de pago de la reclamación por la suma de $1,493,856.59 es improcedente toda vez que en la Región Judicial de Aibonito solo existe una propiedad que no fue incluida en la oferta del *2nd Claim Submission.* Sin embargo, no surge de la referida orden de pago que esta vaya dirigida para el pago de las propiedades sitas en la Región Judicial de Aibonito específicamente.[34] Como bien señalamos previamente, esta orden de pago proviene del acuerdo suscrito del *2nd Claim Submission* que corresponde al ajuste y ofrecimiento de pago que One Alliance le hiciera a PRAPI por veintinueve (29) de las sesenta y cuatro (64) propiedades y que fue plateado en las distintas regiones judiciales. Incluso, como si fuera poco, el TPI de Aibonito le ordena expresamente a One Alliance en su *Sentencia* "[c]ulminar el ajuste y

---

[32] Véase escrito de *Apelación Civil*, pág. 13.

[33] Entradas 89, 92 y 98 del caso Núm. SJ2019CV10751 de SUMAC.

[34] La orden de pago en la *Sentencia* del TPI de Aibonito establece que One Alliance debe "[p]agarle a PRAPI los $1,493,856.59 que le debe bajo el acuerdo suscrito entre las partes respecto el *2nd Claim Submission.*"

pago de las reclamaciones pendientes de propiedad incluidas en parte del *2nd Claim Submission* y la totalidad del *3rd Claim Submission* **sitas en la Región Judicial de Aibonito** en un término perentorio de 30 días."[35] Por tanto, es improcedente si la propiedad sita en Aibonito no fue incluida en la oferta del *2nd Claim Submission* en esta etapa. Así pues, el TPI de Aibonito solo reconoce en su *Sentencia* lo ya resuelto por las demás regiones judiciales en cuanto al pago global del *2nd Claim Submission.*

Al mismo razonamiento llegamos con lo alegado por One Alliance sobre el pago triplicado de los intereses postsentencia. El TPI de Aibonito ordenó el pago de intereses postsentencia calculados al interés legal vigente de 9.25% según dispone la tabla de intereses aplicables a sentencias judiciales emitida por la Oficina del Comisionado de Instituciones Financieras. La Regla 44.3 de Procedimiento Civil, *supra,* establece que el interés postsentencia se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. De este modo, el TPI de Aibonito está reconociendo y ordenando el pago de intereses postsentencia correspondientes a la suma global de $1,493, 856.59 que ya ha sido ordenada en las regiones judiciales de Caguas y Fajardo del ajuste y oferta del *2nd Claim Submission.*

Sobre los honorarios de abogados, One Alliance alega que no proceden estos bajo el Artículo 27.165 del Código de Seguros de Puerto Rico, *supra,* debido a que este está condicionado que sea una sentencia final y no una parcial. El Artículo 27.165, *supra,* dispone que:

> **Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado o el beneficiario designado bajo una póliza o contrato ejecutado por el asegurador, el Tribunal de Primera Instancia** o, en el caso de una apelación en la que prevalezca el asegurado o beneficiario, el tribunal de

---

[35] Apéndice del recurso de *Apelación,* pág. 1898.

apelación, **deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación.** (Énfasis nuestro).

El artículo anterior no hace distinción entre sentencias finales y sentencias parciales. Lo que sí surge del artículo es que al recaer una sentencia por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado, se adjudicará una suma razonable como honorarios por haber procesado la demanda en la que se obtuvo una recuperación. En el caso ante nuestra consideración recayó una sentencia donde la parte asegurada (PRAPI), obtuvo una recuperación. A tales efectos, procede la imposición de honorarios de abogados en este caso bajo el Artículo 27.165 del Código de Seguros de Puerto Rico, *supra*.

Por último, en cuanto al interés legal presentencia, One Alliance alega que no procede este pago puesto que no se cumple con los requisitos de temeridad y que este caso versa sobre incumplimiento de contrato y no sobre cobro de dinero o daños y perjuicios como establece la Regla 44.3 de Procedimiento Civil, *supra*. Sin embargo, al evaluar la orden de pago del TPI de Aibonito se desprende que este foro ordenó el pago de interés legal presentencia por mora y no por temeridad. Según el Código Civil de 1930, incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación. Artículo 1053 del Código Civil de 1930, *supra*. En el caso ante nuestra consideración el foro primario de Aibonito estableció en su *Sentencia* que One Alliance debía "pagarle a PRAPI los intereses pre-sentencia **por morosidad, debido a que One Alliance no tenía razón leg[í]tima para negarse a satisfacer el ajuste y oferta que le cursó a PRAPI en el 2019.**"[36]

---

[36] Apéndice del recurso de *Apelación,* pág. 1898.

Ante ello, One Alliance no nos ha puesto en posición de resolver lo contrario.

En conclusión, si bien es cierto que este tribunal ya había dictado una *Sentencia* en el caso KLCE202201050, donde habíamos determinado que no procedía dictar sentencia sumaria por la existencia de controversia de hechos, la doctrina de cosa juzgada viene a despejar cualquier controversia existente entre las partes del caso de epígrafe. De este modo, las regiones judiciales de Caguas y Fajardo pusieron fin a las controversias sobre fraude. En consecuencia, procede One Alliance cumpla con lo ordenado por el TPI de Aibonito.

**-IV-**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones